FILED
**United States Court of Appeals**
**Tenth Circuit**

**March 12, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ISMAEL VAZQUEZ-GARCIA,

    Defendant - Appellant.

No. 24-2074

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:23-CR-01802-MIS-1)**

_____

J.K. Theodosia Johnson, Office of the Federal Public Defender, Albuquerque, New Mexico, for Defendant – Appellant.

James R.W. Braun, Assistant United States Attorney, Office of the United States Attorney, Albuquerque, New Mexico (Alexander M.M. Uballez, United States Attorney, with him on the brief), for Plaintiff – Appellee.

_____

Before **TYMKOVICH**, **BALDOCK**, and **McHUGH**, Circuit Judges.

_____

**McHUGH**, Circuit Judge.

_____

Appellant Ismael Vazquez-Garcia appeals from his 48-month sentence for illegal reentry. At the sentencing hearing, the district court asked Mr. Vazquez-Garcia numerous questions about a prior child-abuse conviction, relying on factual

allegations in the presentence report ("PSR") about the underlying conduct for that conviction. After the district court finished questioning Mr. Vazquez-Garcia, it sentenced him to 48 months in custody, an 18-month upward variance from the top recommended sentencing range of 24 to 30 months. On appeal, Mr. Vazquez-Garcia argues his sentence is both procedurally and substantively unreasonable.

We hold Mr. Vazquez-Garcia has not shown his sentence is procedurally unreasonable because (1) the district court did not err by adopting the unobjected-to allegations in the PSR about the conduct underlying the child-abuse offense, and (2) the district court did not err by varying upwards based on his criminal history. Mr. Vazquez-Garcia also has not shown that the district court rendered a substantively unreasonable sentence by heavily weighing the child-abuse conviction. Accordingly, we affirm.

## I.    BACKGROUND

### A.    *Procedural History and Presentence Report*

Mr. Vazquez-Garcia is a 42-year-old Mexican citizen. He was first removed from the United States on December 21, 2022, after being released from incarceration for a 2018 child-abuse offense. In November 2023, Border Patrol agents near Lordsburg, New Mexico located Mr. Vazquez-Garcia walking with several other individuals. Upon being questioned, Mr. Vazquez-Garcia admitted that he was a citizen of Mexico and that he reentered the United States without authorization. Consequently, Mr. Vazquez-Garcia was detained and charged in the U.S. District

2

Court for the District of New Mexico with illegal reentry as a felon under 8 U.S.C. § 1326. He pleaded guilty to the offense.

In preparation for Mr. Vazquez-Garcia's sentencing hearing, a probation officer prepared a PSR that recommended a sentencing range of 24 to 30 months, in accordance with the applicable U.S. Sentencing Commission Guideline, § 2L1.2. Under the Guidelines, Mr. Vazquez-Garcia's offense level was 15: the base offense level for the illegal-reentry offense was 8; a ten-level enhancement was added because of his prior child-abuse conviction; and three levels were subtracted for his acceptance of responsibility and timely decision to plead guilty. Mr. Vazquez-Garcia's criminal history score was 5, placing him in criminal history category III, based on his past convictions in Florida for (1) petty theft in 2005; (2) driving under the influence and without a license in 2006; and (3) child abuse in 2018.

The PSR provided detailed factual allegations about the conduct underlying the child-abuse offense. It noted that Mr. Vazquez-Garcia was originally charged with molestation, lewd and lascivious conduct, attempted lewd and lascivious battery, and child abuse, but that all counts other than the child-abuse charge were dismissed. The PSR recounted the following allegations about what occurred: (1) in March 2018, police officers responded to a residence to investigate a report of attempted sexual battery; (2) the officers talked to Mr. Vazquez-Garcia's thirteen-year-old stepdaughter, the victim, who was visibly upset; (3) the victim stated Mr. Vazquez-Garcia was making sexual advances towards her and groped her left breast over her clothing; (4) the victim stated she tried to get away from Mr. Vazquez-Garcia, but he

followed her around the house and outside; (5) the victim eventually locked Mr. Vazquez-Garcia outside the house; (6) in response, Mr. Vazquez-Garcia tried to break the sliding glass door and told the victim she would enjoy kissing him; and (7) Mr. Vazquez-Garcia was outside the house holding a beer when the officers arrived. Mr. Vazquez-Garcia was ultimately sentenced to five years in custody for the child-abuse conviction.

The PSR further stated that Mr. Vazquez-Garcia had not accrued a disciplinary record while he was incarcerated, and it noted that he had completed several courses of study during his imprisonment. And the PSR included Mr. Vazquez-Garcia's story regarding why he returned to the United States: after he was removed in December 2022, his brother was murdered by a cartel in April 2023, and he was personally attacked by cartel members on two separate occasions. During a third altercation, cartel members threatened to kill Mr. Vazquez-Garcia. Because Mr. Vazquez-Garcia feared for his life and needed to earn more money to buy medication for his father, he returned to the United States. Last, the PSR recommended against departing or varying from the sentencing range.

Mr. Vazquez-Garcia filed a sentencing memorandum prior to the sentencing hearing, in which he attested he had reviewed the PSR with counsel and had no "objections to the calculations nor additional corrections." ROA Vol. I at 9. Mr. Vazquez-Garcia also expressed remorse for reentering the country without authorization and asked for a sentence below the Guidelines range, noting that the average sentence for defendants with the same offense level and criminal history

category is 18 to 19 months. In its response, the Government argued a Guidelines-range sentence was appropriate, even considering the unobjected-to facts in the PSR about Mr. Vazquez-Garcia's child-abuse conviction.

### B.    Sentencing Hearing

The district court conducted a sentencing hearing on April 18, 2024. The court began by asking Mr. Vazquez-Garcia's counsel if she had reviewed the PSR with her client, to which counsel replied, "Yes I have. And there's no corrections or objections." ROA Vol. III at 5. The court then informed counsel that it had "some concerns about [Mr. Vazquez-Garcia's] prior conviction in 2018," and that it "might consider an upward variance." *Id.*

Next, the Government argued that because the facts in the PSR about the child-abuse conviction had "not been contested," it believed a 28-month sentence would sufficiently account for the seriousness of Mr. Vazquez-Garcia's criminal history. *Id.* at 5–6. The Government noted that although "sometimes the Guidelines do not take into account" a defendant's "egregious priors," it believed a Guidelines-range sentence was appropriate because Mr. Vazquez-Garcia's offense level was enhanced by ten points because of the child-abuse conviction. *Id.* at 6.

Mr. Vazquez-Garcia's counsel next argued that the court should "not upward vary from the Guidelines" because Mr. Vazquez-Garcia was already "getting a ten-level enhancement for" the child-abuse conviction and he had served "a substantial sentence for that" conviction. *Id.* Counsel pointed out this was Mr. Vazquez-Garcia's first reentry offense and explained that he had not understood prior to reentering the

country how serious the offense of illegal reentry as a felon was. Counsel further noted that Mr. Vazquez-Garcia had been sober since his arrest in 2018 and that he had pursued rehabilitation in prison, completing multiple courses of study. And counsel reiterated why Mr. Vazquez-Garcia returned to the United States: cartel members killed his brother in April 2023, he was personally attacked and threatened with death by cartel members, and he wanted to work to help his father.

Mr. Vazquez-Garcia also spoke to the court. He stated he previously "had problems with alcoholic beverages," and he was intoxicated when he said "inappropriate words" to his stepdaughter in the incident underlying his child-abuse conviction. *Id.* at 11. He claimed he had stopped drinking to the point of intoxication. He further explained he returned to the United States only because he wanted "to work for [his] family." *Id.* at 12. He told the court that his family was "suffering" and his "father [was] not doing very well," and thus he asked for a time-served sentence. *Id.* at 13. After Mr. Vazquez-Garcia gave his statement, the district court asked him how his brother was killed and where in the United States he had intended to find work. Mr. Vazquez-Garcia answered both questions.

The court then told Mr. Vazquez-Garcia, "So my concern is when you molested your 13-year-old stepdaughter. Do you want to address those actions?" *Id.* at 14. Mr. Vazquez-Garcia responded that he had not committed "sexual abuse," *id.*, that he did not remember what happened during the incident, *id.* at 15, and that it "was not [his] intention" to molest or abuse his stepdaughter, *id.* at 16. In an ensuing, lengthy conversation, the court repeatedly pressed Mr. Vazquez-Garcia to explain his

6

actions. As the court continued to question Mr. Vazquez-Garcia, his counsel interjected and argued that "from the facts and based on [counsel's] understanding, there was alcohol" involved and that is why Mr. Vazquez-Garcia "doesn't recall [] the [] allegations" in the PSR. *Id.* at 16–17. The court acknowledged that Mr. Vazquez-Garcia's memory might be impaired, but stated it was "not asking him to recall specific facts," it rather wanted him to provide "an explanation for molesting this child." *Id.* at 18. The court then asked Mr. Vazquez-Garcia if there was an "explanation for that you'd like to provide," and he replied, "No, I have none." *Id.* at 18.

At this point, the district court pronounced a sentence of 48 months and adopted the PSR's factual allegations. The court acknowledged that Mr. Vazquez-Garcia had requested a downward variance and that the Government had requested a 28-month sentence. *Id.* at 19. It noted Mr. Vazquez-Garcia's statements about "his memory lapse, the threats that he received in Mexico, the murder of his brother for refusing to work for the cartels, and [that] he was threatened by the cartels." *Id.* The court also recognized that Mr. Vazquez-Garcia received a five-year sentence "for his child abuse conviction" and that this was his first reentry offense. *Id.* And the court noted Mr. Vazquez-Garcia had indicated he had stopped drinking and that he returned to the United States only "to provide a better life for his family." *Id.* at 20.

But the district court found that the sentencing factors under 18 U.S.C. § 3553(a) justified an upward variance. The court stated that "[t]he nature and circumstances of this offense are [Mr. Vazquez-Garcia] reentering the United States

7

less than a year after he completed his sentence for child abuse in Florida, for which he received five years' custody." *Id.* at 20. And the court found Mr. Vazquez-Garcia's relevant "history and characteristics" included "his 2005 conviction for theft; his 2006 conviction for driving under the influence of alcohol; [and] his 2018 conviction for child abuse . . . involving the sexual assault of a child." *Id.*

The court further ruled that an upward variance was justified by the statutory goals of punishment: retribution, deterrence, public safety, and rehabilitation. The court noted the "kinds of the sentences available, including potentially time-served" and "the Guideline[s] range in this case of 24 to 30 months." *Id.* at 21–22. The court found an above-Guidelines sentence was reasonable under "the specific facts in this case." *Id.* at 22. Last, the court noted "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* The court stated it did not believe any disparity would result from the 48-month sentence but ruled, in the alternative, that any disparity was "warranted by the facts in this case." *Id.*

Mr. Vazquez-Garcia timely appealed his sentence.

## II.    JURISDICTION

The district court had jurisdiction over Mr. Vazquez-Garcia's case pursuant to 18 U.S.C. § 3231. This court has jurisdiction over the appeal under 28 U.S.C. § 1291.

## III.    DISCUSSION

Mr. Vazquez-Garcia has not established that his sentence was procedurally or substantively unreasonable. "Reasonableness review is a two-step process comprising

8

a procedural and a substantive component." *United States v. Jackson*, 82 F.4th 943, 949 (10th Cir. 2023) (quotation marks omitted). In deciding whether a sentence was procedurally unreasonable, we consider "whether the district court committed any error in calculating or explaining the sentence." *Id.* (quotation marks omitted). If a sentence was procedurally reasonable, we then turn to substantive reasonableness, examining "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Id.* (quotation marks omitted). Ordinarily, we review the reasonableness of a sentence for abuse of discretion. *Id.* But when an objection to the procedural reasonableness of a sentence is "not contemporaneously raised," that objection is "subject to plain error review." *United States v. Ruby*, 706 F.3d 1221, 1225 (10th Cir. 2013).

Mr. Vazquez-Garcia argues his sentence is procedurally unreasonable because (1) the district court "rel[ied] on mere allegations underlying a conviction" to fashion his sentence, violating his right to due process,[1] Appellant's Br. at 8, and (2) the district court erred by varying upwards based on his criminal history. Mr. Vazquez-Garcia contends his sentence is substantively unreasonable because the district court

---

[1] Mr. Vazquez-Garcia does not style his constitutional argument as a procedural reasonableness challenge. Even so, an argument that a defendant's "due process rights were violated because of unreliable hearsay evidence" is at root "an objection that [the defendant's] sentence was procedurally unreasonable" because it was "based on erroneous facts. *United States v. Ruby*, 706 F.3d 1221, 1225 (10th Cir. 2013); *see also United States v. Worku*, 800 F.3d 1195, 1202 n.5 (10th Cir. 2015) (construing a due process challenge as a challenge to "the procedural reasonableness of a sentence").

"gave inordinate weight" to his child-abuse conviction in deciding to impose a major upward variance. Appellant's Br. at 20. We address each argument in turn.

### A.    Procedural Reasonableness

Mr. Vazquez-Garcia has not shown his sentence is procedurally unreasonable. Mr. Vazquez-Garcia argues the district court erred by adopting and relying on the PSR's allegations about his child-abuse conviction. Specifically, Mr. Vazquez-Garcia asserts that the district court violated his right to due process by adopting those allegations because they lacked minimal indicia of reliability. Mr. Vazquez-Garcia also argues the district court wrongly considered his criminal history for purposes of varying upwards because the Guidelines range already accounts for that history.

Mr. Vazquez-Garcia concedes that plain error review applies to his procedural reasonableness argument. Plain error review requires showing "that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights." *United States v. Magallanez*, 408 F.3d 672, 678 (10th Cir. 2005). "If all these conditions are met, a court reviewing the error may exercise discretion to correct it if the error seriously affects the fairness, integrity, or public reputation of judicial proceeding." *Id.* Mr. Vazquez-Garcia fails at the first step with both procedural reasonableness arguments.

Beginning with the due process argument, Mr. Vazquez-Garcia has not shown that the district court erred by adopting the PSR's unobjected-to facts about his child-abuse conviction. It is well-established that "a defendant has a due process right to have his or her sentence based on accurate information." *United States v. Strayer*,

10

846 F.2d 1262, 1267 (10th Cir. 1988) (quotation marks omitted). But due process is provided by Federal Rule of Criminal Procedure 32, "which specifically pertains to allegations of inaccurate information in the reports." *Id.* This rule provides that when a defendant objects to any factual allegations in a PSR, the sentencing court must "rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). Absent an objection, however, the rule authorizes a district court to "accept any undisputed portion of the [PSR] as a finding of fact." Fed. R. Crim. P 32(i)(3)(A).

Rule 32(i) thus imposes "an affirmative duty [on defendants] to make a showing that the information in the [PSR] was unreliable and articulate the reasons why the facts contained therein were untrue or inaccurate." *United States v. McDonald*, 43 F.4th 1090, 1096 (10th Cir. 2022) (second alteration in original) (quotation marks omitted). Put simply, "the defendant must assert that the facts alleged in the PSR are false." *Id.* at 1096 n.3. If a defendant does not object to a factual allegation in a PSR, then the district court can properly rely on that allegation as a finding of fact for purposes of sentencing. *See, e.g.*, *United States v. Smith*, 815 F.3d 671, 679 (10th Cir. 2016) (holding the district "court was free to rely upon the PSR's description of [a] state rape charge" absent any objections); *United States v. Hooks*, 551 F.3d 1205, 1217 (10th Cir. 2009) ("If a defendant fails to specifically object to a fact in the PSR, the fact is deemed admitted by the defendant."); *United States v. Cereceres-Zavala*, 499 F.3d 1211, 1214 (10th Cir. 2007) ("[T]o invoke the

11

district court's Rule 32 fact-finding obligation, the defendant is required to make specific allegations of factual inaccuracy." (quotation omitted)).

Mr. Vazquez-Garcia does not cite or discuss Rule 32(i) in his briefs. At oral argument, his counsel asserted the rule is "fundamentally unfair," insofar as it allows a district court to treat allegations in a PSR as findings of fact without deciding that they are supported by minimal indicia of reliability. Oral Argument at 14:06, *United States v. Vazquez-Garcia*, No. 24-2074 (Jan. 22, 2025). But counsel cites no authority suggesting that Rule 32(i)'s procedure is unconstitutional.[2] To the contrary, our precedent shows that due process is satisfied if a defendant receives "adequate notice of and an opportunity to rebut or explain information that is used against him." *United States v. Beaulieu*, 893 F.2d 1177, 1181 (10th Cir. 1990). Moreover, Rule 32(i)'s requirement of an objection is imminently sensible—a defendant is best situated to know whether particular allegations about his or her background are

---

[2] In fact, every case Mr. Vazquez-Garcia relies on indicates that a defendant must object to inaccurate allegations in a PSR. *See United States v. Padilla*, 793 F. App'x 749, 756 n.4 (10th Cir. 2019) (involving a defendant who argued specific facts in the PSR were "untrue or inaccurate"), *disapproved by United States v. McDonald*, 43 F.4th 1090 (10th Cir. 2022); *United States v. Fennell*, 65 F.3d 812, 813 (10th Cir. 1995) (reviewing the district court's reliance on allegations in the PSR "over the objections of [the defendant]"); *United States v. Beaulieu*, 893 F.2d 1177, 1180 (10th Cir. 1990) ("*When there is reason to question the reliability of the information made available to the judge*, the Guidelines endorse the preexisting practice of allowing the district court to conduct an evidentiary hearing." (emphasis added)). Mr. Vazquez-Garcia also relies on caselaw discussing the categorical approach in the context of the Armed Career Criminal Act ("ACCA"), but we have already rejected similar attempts to broadly apply the categorical approach outside the ACCA's context, *see United States v. Martinez-Candejas*, 347 F.3d 853, 858 (10th Cir. 2003) ("The Supreme Court . . . did not impose the categorical approach as a universal requirement of all sentencing enhancements.").

correct. In sum, Mr. Vazquez-Garcia provides no reason to question whether the procedure in Rule 32(i) is constitutional.

Here, Mr. Vazquez-Garcia never objected to the PSR's allegations about his child-abuse conviction despite receiving multiple opportunities to object. In his sentencing memorandum, Mr. Vazquez-Garcia's counsel stated she had reviewed the PSR with him and they had "no objections." ROA Vol. I at 9. At the sentencing hearing, counsel again attested that she had reviewed the PSR with Mr. Vazquez-Garcia and they had "no corrections or objections." ROA Vol. III at 5. During the court's colloquy with Mr. Vazquez-Garcia it repeatedly asked him to explain why he molested his stepdaughter, but he never asserted that any particular facts in the PSR were false. Because Mr. Vazquez-Garcia had every opportunity to voice an objection, yet failed to do so, the district court did not err by adopting the PSR's allegations as findings of fact.

Turning next to Mr. Vazquez-Garcia's argument that the district court erred by considering his criminal history for purposes of an upward variance, Mr. Vazquez-Garcia's criminal background was pertinent to the § 3553(a) factors. Nonetheless, he argues that "when the applicable Guideline and adjustments account for a factor, 'departure from the Guideline is permissible only if that factor is present in a manner or degree unusual enough to distinguish the case from the "heartland" of cases covered by the Guideline.'" Appellant's Br. at 18 (quoting *United States v. Marquez-Gallegos*, 217 F.3d 1267, 1270 (10th Cir. 2000)). Mr. Vazquez-Garcia thus asserts

13

the district court erred by not explaining why his offense fell "outside the heartland of reentry cases with prior serious felonies." *Id.*

This argument fails because a heartland analysis is required only when a district court *departs*, rather than varies, from the Guidelines range. *See United States v. Martinez-Barragan*, 545 F.3d 894, 900 (10th Cir. 2008). "Departures and variances are analytically distinct, and courts must be careful not to confuse them." *Id.* at 901. "'Departure' is a term of art under the Guidelines and refers only to non-Guidelines sentences imposed under the framework set out in the Guidelines." *Irizarry v. United States*, 553 U.S. 708, 714 (2008). On the other hand, a variance is a non-Guidelines sentence arising from a district court's case-specific analysis of the sentencing factors in § 3553(a). *See id.*; *United States v. Beltran*, 571 F.3d 1013, 1019 (10th Cir. 2009) (discussing the differences between a variance and "the stricter standard for a departure"). Although whether a particular offense falls within the heartland of offenses "involving similar defendants convicted of the same conduct" is relevant to departures, a district court has independent "discretion to vary [] based on the § 3553(a) factors" even when an offense falls in the heartland of similar offenses. *United States v. Gallardo-Medina*, 769 F. App'x 546, 549 (10th Cir. 2019) (unpublished).

Of course, a heartland analysis may be relevant to "the district court's analysis of whether to vary from the Guidelines." *Martinez-Barragan*, 545 F.3d at 901; *see also Kimbrough v. United States*, 552 U.S. 85, 89 (2007) ("[A] district court's decision to vary from the advisory Guidelines may attract greatest respect when the

14

sentencing judge finds a particular case 'outside the "heartland" to which the Commission intends individual Guidelines to apply.'" (quoting *Rita v. United States*, 551 U.S. 338, 351 (2007))). But Mr. Vazquez-Garcia cites no authority showing the district court committed a procedural *error*, let alone a plain procedural error, by not conducting such an analysis here.

Additionally, § 3553(a)(1) mandates that district courts consider defendants' "history" when deciding whether to vary from the Guidelines range. The district court was thus required to consider whether Mr. Vazquez-Garcia's entire history—including his criminal history—supported any variance from the Guidelines range, even though that history was already used to calculate his Guidelines range. *See United States v. Barnes*, 890 F.3d 910, 921 (10th Cir. 2018) (explaining that district courts "have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory [G]uidelines range" (quotation marks omitted)). The district court did not commit an error, therefore, by finding that Mr. Vazquez-Garcia's criminal history supported an upward variance notwithstanding that it was used to calculate his Guidelines range.

Accordingly, the district court did not err by adopting the unobjected-to facts in the PSR or by considering Mr. Vazquez-Garcia's criminal history for purposes of an upward variance. Mr. Vazquez-Garcia therefore has not shown that his sentence was procedurally unreasonable.

### B.    Substantive Reasonableness

Mr. Vazquez-Garcia argues his sentence is substantively unreasonable because the district court "gave inordinate weight to" the conduct underlying his 2018 child-abuse conviction. Appellant's Br. at 20. Although the record shows that the district court placed great weight on Mr. Vazquez-Garcia's child-abuse conviction, that conviction and the underlying conduct was highly relevant to several § 3553(a) factors. The district court thus did not abuse its discretion by attaching great weight to Mr. Vazquez-Garcia's abusive conduct in 2018.

### 1.    Standard of Review

"We review a district court's sentencing decision for substantive reasonableness under an abuse-of-discretion standard, looking at the totality of the circumstances." *United States v. Crosby*, 119 F.4th 1239, 1246 (10th Cir. 2024) (quotation marks omitted). "A district court abuses its discretion when it renders a judgment that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* (quotation marks omitted). In conducting this review, we consider "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Jackson*, 82 F.4th at 949 (quotation marks omitted). Even when a sentence falls "outside the Guidelines range," we must "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall v. United States*, 552 U.S. 38, 51 (2007).

At the same time, reasonableness review "must not be regarded as a rubber stamp." *United States v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008). When a district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. As such, a major variance "should be supported by a more significant justification than a minor one." *Id.* Further, closer review of a sentence "may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect § 3553(a) considerations' even in a mine-run case." *Kimbrough*, 552 U.S. at 109 (quoting *Rita*, 551 U.S. at 351).

Here, the 48-month sentence was a major upward variance. The Guidelines range for Mr. Vazquez-Garcia's offense was 24 to 30 months. The average sentence for defendants with the same offense level and criminal history category was 18 to 19 months. Mr. Vazquez-Garcia's counsel asked for a Guidelines-range sentence, and the Government asked for a 28-month sentence. Although no party requested an above-Guidelines sentence, the district court sentenced Mr. Vazquez-Garcia to 48 months in custody, 18 months above the top Guidelines range and 30 months above the average sentence for similarly situated defendants. This major variance must "be supported by a more significant justification than a minor" variance. *Gall*, 552 U.S. at 50.

**2.    The district court did not abuse its discretion by imposing an above-Guidelines sentence.**

Mr. Vazquez-Garcia's sole argument for substantive unreasonableness is that the district court placed "inordinate weight" on his child-abuse conviction. Appellant's Br. at 20. To be sure, the record shows that the district court was troubled by the child-abuse conviction. At the sentencing hearing, the district court directly told Mr. Vazquez-Garcia as much. And the district court closely questioned Mr. Vazquez-Garcia about that conduct. Similarly, in pronouncing its sentence, the district court repeatedly referenced the child-abuse conviction: it characterized the "nature and circumstances of this offense" as Mr. Vazquez-Garcia reentering the country after "he completed his sentence for child abuse in Florida," *id.* at 20; the court found relevant to his history the "conviction for child abuse, as laid out in [the PSR], involving the sexual assault of a child," *id.*; it described the illegal-reentry offense as serious because he had "a serious violent conviction against a child," *id.* at 21; and it found there was a heightened need to protect the public because of the child-abuse conviction, *id.*

As discussed, the district court could properly consider Mr. Vazquez-Garcia's criminal history under § 3553(a)(1). *See, e.g.*, *Barnes*, 890 F.3d at 921. At the same time, a district court can abuse its discretion by varying upwards solely because of past conduct unrelated to the offense of conviction. *See United States v. Allen*, 488 F.3d 1244, 1259 (10th Cir. 2007). In *Allen*, we reversed a major upward variance because it was not based on the defendant's conviction for distributing drugs but

18

rather was based on "uncharged, unrelated misconduct" involving the defendant's attempted sexual abuse of a child and solicitation of murder. *Id.* at 1262. We found support for this holding in *Blakely v. Washington*, 542 U.S. 296 (2004), in which the Supreme Court described as "absurd" the theory "that a judge could sentence a man for committing murder even if the jury convicted him only of illegally possessing the firearm used to commit it." *Allen*, 488 F.3d at 1261 (quoting *Blakely*, 542 U.S. at 306). The *Allen* court reasoned the situation before it was "precisely the scenario the *Blakely* Court labeled as too 'absurd' to contemplate: that a judge could sentence a man for attempted sexual abuse or solicitation of murder, even though he was convicted only of distribution of methamphetamine." *Id.* In sum, a district court may not sentence a defendant "as if he had committed a totally different and 'far more serious[] crime.'" *Pinson*, 542 F.3d at 838 (quoting *Allen*, 488 F.3d at 1260).

The Sixth Circuit has also reversed an upward variance based on past conduct with no "meaningful relationship between the offense of conviction and the defendant's alleged likelihood of reoffending." *United States v. Lee*, 974 F.3d 670, 681 (6th Cir. 2020). The defendant in *Lee* was convicted for possession of a stolen firearm, his Guidelines range was 30 to 37 months, and the district court sentenced him to 60 months based on criminal history consisting of numerous parole violations and a 2003 criminal-sexual-contact offense that "the district court found 'troubling.'" *Id.* at 675. The *Lee* court found dispositive that the present defendant had never before committed a firearm offense and had "not been convicted of any violent crime since his [] conviction in 2003, a conviction which occurred fifteen years prior to the

instant offense." *Id.* at 678. The court therefore reversed, reasoning that § 3553(a) provides no "excuse for a district court to subject a defendant to, what is in essence, plenary resentencing for his prior offenses—especially when those offenses bear no similarity to the instant offense." *Id.* at 681.

Mr. Vazquez-Garcia's sentence is dissimilar from those in *Allen* and *Lee* because the conduct underlying Mr. Vazquez-Garcia's 2018 child-abuse conviction was relevant to the seriousness of his illegal-reentry offense. Notably, the child-abuse conviction was not remote: the conduct underlying that conviction occurred five years prior to Mr. Vazquez-Garcia's illegal reentry in 2023. *Cf. Lee*, 974 F.3d at 678 (finding relevant the fifteen-year gap between the defendant's serious prior and his offense of conviction). The seriousness of the conduct underlying that conviction was relevant to the seriousness of Mr. Vazquez-Garcia's reentry offense because "the crime of illegal reentry by an alien who has committed a violent felony is a serious one." *United States v. Guerrero-Carreon*, 556 F. App'x 643, 645 (10th Cir. 2014) (unpublished). The district court therefore reasonably treated the sexual abuse underlying the child-abuse conviction as pertinent to the seriousness of the offense of conviction. *See Martinez-Barragan*, 545 F.3d at 905.

Also relevant was that nothing indicated Mr. Vazquez-Garcia was remorseful for his actions in 2018 or that he would not abuse other children if he had reentered the country. When the district court asked Mr. Vazquez-Garcia about the conduct underlying his child-abuse conviction, he attempted to minimize or deny his actions. He claimed he did not sexually abuse his stepdaughter, without offering a counter-

narrative to the allegations in the PSR about the underlying conduct. He stated he could not remember what had happened because he had been drinking. And he described the incident underlying his child-abuse conviction as one in which he said "inappropriate words and create[d] family problems," without acknowledging that he sexually abused his stepdaughter. ROA Vol. III at 11. Mr. Vazquez-Garcia had not taken substance-abuse classes, nor did he testify about any concrete steps he had completed to prevent himself from abusing other children in the future, other than purportedly curbing—although not ceasing—his alcohol consumption. In short, nothing indicated that Mr. Vazquez-Garcia's relevant personal characteristics had changed since he sexually abused his stepdaughter in 2018.

Overall, the seriousness of Mr. Vazquez-Garcia's conduct in 2018 was relevant to several § 3553(a) factors. As the district court noted, Mr. Vazquez-Garcia's conduct in 2018—and his evasive explanations for that conduct when questioned by the court—was relevant to his "history and characteristics" under § 3553(a)(1). *See Pinson*, 542 F.3d at 836, 838 (affirming a major upward variance based on a defendant's dangerous past conduct because that conduct reasonably illustrated the defendant's personal characteristics). The severity of Mr. Vazquez-Garcia's relatively recent conduct in 2018 was directly pertinent to the "seriousness" of the illegal-reentry offense under § 3553(a)(2)(A). Finally, the district court reasonably determined that Mr. Vazquez-Garcia's attempt to return to the country despite recently molesting a child indicated a heightened need "to protect the public from further crimes of the defendant," under § 3553(a)(2)(C).

21

Furthermore, the district court repeatedly noted that Mr. Vazquez-Garcia rapidly returned to the United States less than a year after he was removed. The quickness of Mr. Vazquez-Garcia's return reasonably implicated a need "to afford adequate deterrence to criminal conduct," by deterring future illegal reentries, under § 3553(a)(2)(B).

In sum, the district court's focus on the conduct underlying Mr. Vazquez-Garcia's child-abuse conviction was not "manifestly unreasonable" because that conduct was directly relevant to multiple § 3553(a) factors. *Crosby*, 119 F.4th at 1246 (quotation marks omitted). Accordingly, the district court did not abuse its discretion by imposing this above-Guidelines sentence.

## IV.    CONCLUSION

For the reasons above, we AFFIRM the district court's sentence.