FILED
United States Court of Appeals
Tenth Circuit

June 10, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SANTIAGO ADELIO CORTEZ,

    Defendant - Appellant.

No. 23-2177

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**
**(D.C. No. 2:23-CR-01123-MIS-1)**

_____

Emil J. Kiehne, Assistant United States Attorney (Alexander M.M. Uballez, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Violet N. D. Edelman, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

_____

Before **TYMKOVICH**, **BALDOCK**, and **McHUGH**, Circuit Judges.

_____

**BALDOCK**, Circuit Judge.

_____

After his apprehension in the southern New Mexico desert in May 2023, Defendant Cortez, a citizen of El Salvador, entered a blind plea to reentry of a removed alien subsequent to a conviction for commission of an aggravated felony, in violation of 8 U.S.C. § 1326(a)(1), (b)(2). Subsection (b)(2) provides for a maximum sentence of 20 years'

imprisonment. Based on a total offense level of 15 and a criminal history category of II, the Presentence Investigation Report (PSR) calculated Defendant's advisory guidelines range as 21 to 27 months' imprisonment. After providing proper notice and holding a sentencing hearing, the court varied upward and sentenced Defendant to 60 months' or five years' imprisonment. Defendant now appeals, arguing the district court's sentence is both procedurally and substantively unreasonable. Our jurisdiction arises under 18 U.S.C. § 3742. Having carefully reviewed both the undisputed PSR and sentencing transcript, we affirm for reasons that follow.

## I.

The historical facts are taken from the PSR. Notably, Defendant did not file a pre-sentencing memorandum, and when asked at sentencing if he had any objections or changes to the PSR, Defendant responded no. Defendant's present conviction results from what appears to be his third unlawful entry into the United States. Prior to his initial removal in September 2005, Defendant was first convicted in 1999 of malicious destruction of property under $300 and disorderly conduct in Maryland state court. Next, Defendant, under the alias Santiago Gayton, was convicted in the same state court in 2001 of second degree assault reportedly arising from an attempted robbery. Six months later, Defendant was back before the Maryland state court as Santiago Gaitan. This time Defendant was convicted of manslaughter and sentenced to ten years' imprisonment with five years suspended. The PSR reports that in 2002, Defendant "was originally charged with murder which was amended to the offense of conviction and an additional charge of assault with a deadly weapon was dismissed." Defendant was released from Maryland state prison in

2

August 2005 and promptly deported. Defendant, thrice convicted, returned to the United States less than two years later.

Prior to his second removal in December 2019, Defendant was convicted in Nevada state court in 2007 of battery with intent to commit a crime and attempted first-degree kidnapping. Defendant spent the next 12 years in Nevada state prison. The undisputed PSR tells us that in June 2007, according to the police report, Las Vegas police responded to a reported sexual assault at a 7-11 convenience store. The report states Defendant was talking to the victim, L.P., when "he grabbed her and forced her to the ground and dragged her toward some bushes." The report then describes the incident: "The Defendant forced L.P.'s pants and underwear off and left them hanging around one of her legs. He choked her and covered her mouth. The victim believed the Defendant to be intoxicated. The victim reported she kept saying 'no' to the Defendant but he was too violent." As a result of the assault, the PSR states L.P. sustained bites to her nose and thumb and two fractured vertebrae and was hospitalized. Upon questioning by police, Defendant initially denied knowledge of the incident but then admitted "having sex with the victim near the bushes." Defendant said he had been drinking beer and could not get an erection. He denied becoming violent with the victim. In a second interview, Defendant said he offered the victim $20 to have sex. He admitted to biting the victim's nose. Defendant was released from state prison in November 2019 and again deported, only to return to the United States a third time.

At the sentencing hearing for his present reentry offense, both the Government and Defendant requested a within-guidelines-range sentence. The district court, however,

3

expressed concern about, among other things, Defendant's "extremely violent prior in 2007 that [he] got a very long sentence for in Nevada." The court noted Defendant only recently had been released from prison and deported but was already back in the United States before a federal court. Defendant told the court he was intoxicated at the time of his 2007 offenses. Defense counsel acknowledged "at that time, [Defendant] said that he believed that he could have done what they had accused him of[.]" Counsel explained Defendant was intoxicated and "sometimes he does not remember what he does when he drinks." When the court asked whether Defendant initially admitted to assaulting L.P., counsel responded "yes." But the district court had a different view:

> So the Presentence Report that was not objected to or corrected indicates the Defendant did not admit that he had violently sexually assaulted this woman. It said that the Defendant was interviewed and he denied knowledge of the incident originally to law enforcement. Then he admitted to having sex with the victim, but he denied being violent when the facts are extremely violent and then he said that basically he had offered the victim money for sex.
>
> So where was [Defendant] honest about violently raping this woman?
>
> * * *
>
> He choked her. He bit her a bunch. She was bleeding when they found her. He doesn't remember that?

The court then asked Defendant if he had anything else to say before the court imposed sentence. Contradicting the undisputed PSR, specifically his statement to police near the time of the incident that he had "sex with the victim," Defendant now told the court he never had sex with L.P., but rather suggested she falsely accused him.

> I want to say something else, Your Honor. I want to say that I met her. She was under the bridge. She was smoking – she was doing drugs. I was drunk and I was also doing drugs. And we agreed on a sexual exchange for $20.

4

> But I ended up not having sex with her. I didn't touch her. I was drunk and I couldn't do that. But she was mad because I didn't give her the $20, and that's why she accused me with the police. When I did the interview with the police, I told the truth to the police.
>
> * * *
>
> So in the craziness of being drunk, it's true that I may have bit her or bitten her, but we did not have sex. . . . I never raped her.

When Defendant had finished speaking, the district court sentenced him to 60 months' imprisonment. Explaining the reasons for the sentence, the district court first adopted the PSR's undisputed factual recitations. The court next considered Defendant's arguments regarding his past alcohol and drug consumption, his rehabilitation while in Nevada state prison—including his unsupported statements that he had stopped drinking alcohol and found religion—and his medical needs relating to a severe case of psoriasis. Importantly, the court also considered Defendant's argument that his criminal history was dated. The court noted Defendant was imprisoned from 2007 until 2019 and had not had the opportunity to commit additional violent crimes during that time.

The district court then addressed the applicable § 3553(a) factors, beginning with the nature and circumstances of the offense and the history and characteristics of Defendant. 18 U.S.C. § 3553(a)(1). The court noted Defendant's history of violence and observed that Defendant reentered the United States "fairly quickly" after serving a lengthy sentence in Nevada for battery and attempted kidnapping, "the underlying facts of which included a very serious allegation of sexual assault." Turning to the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide punishment for the offense, *id*. § 3553(a)(2)(A), the court explained that an above-

guidelines sentence was necessary to satisfy all three criteria. The court also considered the need to afford adequate deterrence to criminal conduct as well as the need to protect the public from further crimes perpetrated by Defendant. *Id*. § 3553(a)(2)(B), (C). The court again noted that Defendant unlawfully reentered the United States a third time not long after serving a lengthy state sentence for a violent crime. Moreover, the court's concern about Defendant's behavior and willingness to continue to commit crimes in the United States, led it to conclude an above-guidelines sentence was required to protect the public.

The district court concluded by considering the kinds of sentences available and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id*. § 3553(a)(3)–(6). The court recognized that a guidelines-range sentence of 21 to 27 months was presumptively reasonable but found the presumption overcome by the facts of Defendant's case. The court further found Defendant had not shown a sentencing disparity between himself and similarly situated defendants. In the alternative, the court found if any sentencing disparity existed, such disparity was "warranted by the specific facts of this case." The court reiterated that Defendant has multiple convictions for violent crimes in the United States, served a very long time for one of those crimes, an aggravated felony, and soon after returned to the United States.

## II.

Defendant first asserts his 60-month sentence is procedurally unreasonable solely because the district court selected his sentence based on its finding that he "raped" L.P.

*See Gall v. United States*, 552 U.S. 38, 51 (2007) (selecting a sentence based on clearly erroneous facts constitutes procedural error). Because Defendant failed to timely object to the district court's reference to Defendant's sexual assault of L.P., as "rape," our review is for plain error. To establish plain error, a defendant, of course, must first establish legal error. *United States v. B.N.M.*, 107 F.4th 1152, 1170 (10th Cir. 2024). A factual finding constitutes legal error only if it is clearly erroneous. *United States v. Craine*, 995 F.3d 1139, 1157 (10th Cir. 2021). To be clearly erroneous, a finding must be without factual support in the record. *Id.* After reviewing all the evidence, we must be "left with a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted). So long as "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (internal quotation marks omitted).

Given the undisputed PSR, the district court's statements that Defendant "raped" L.P. do not constitute a clearly erroneous finding. As we recently observed, "[i]f a defendant does not object to a factual allegation in a PSR, then the district court can properly rely on that allegation as a finding of fact for purposes of sentencing." *United States v. Vazquez-Garcia*, 130 F.4th 891, 898 (10th Cir. 2025). Based on his unsubstantiated denials, Defendant would have us ignore that by failing to object to the PSR, he effectively admitted what the PSR alleged, namely that he (1) grabbed L.P., (2) threw her to the ground, (3) dragged her toward some bushes, (4) choked her, (5) covered her mouth, (6) forced her pants and underwear off, (7) bit her nose and thumb, (8) fractured

7

two of her vertebrae, and (9) had sex with her. As a result of all this, L.P. was hospitalized. These uncontested facts sound to us very much like something akin to "rape." Defendant is keen to point out that Nevada requires "sexual penetration" as an element of the crime of sexual assault. Nev. Rev. Stat. § 200.366. But even setting aside for the moment that the undisputed PSR tells us Defendant admitted shortly after the incident "to having sex with the victim," the term rape today is often defined generically as "[u]nlawful sexual activity (esp. intercourse) with a person (usu. a female) without consent and usu. by force or threat of injury." *Rape*, Black's Law Dictionary 1513 (12th ed. 2024). Today rape is also termed "sexual assault," "sexual battery," or "sexual abuse." *Id.*

According to Defendant, the district court varied upwards "on an assumption drawn from disputed allegations reflected in the PSR." Aplt's Op. Br. at 14. At his sentencing hearing, Defendant told the court he was drunk, could not get an erection, and never had sex with L.P. And because he claimed he never had sex with L.P., or more specifically, penetrated her, Defendant asserts the record in no sense supports a finding that he raped her. But if, contrary to the PSR, this was the version of events Defendant wished to portray before the district court, he was too late. Rule 32(i)(3)(A) of the Federal Rules of Criminal Procedure permits a district court to "accept any undisputed portion of the presentence report as a finding of fact." *See United States v. Harris*, 447 F.3d 1300, 1306 (10th Cir. 2006). Defendant's failure to formally object to the PSR prior to or at sentencing relieved the Government from having to develop a factual record upon which the district court could assess the validity of his bare assertions. Perhaps concealing the truth was Defendant's sentencing strategy, in effect turning the matter into a "she said, he said." But where the

8

record supports "two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Craine*, 995 F.3d at 1157 (internal quotation marks omitted). Because Defendant failed to specifically object to the factual allegations in the presentence report, the district court properly deemed those allegations admitted, thus relieving the Government of its burden to produce additional evidence in support of them. *Vazquez-Garcia*, 130 F.4th at 898. The district court's use of the term "rape," while perhaps reflexive, is not so far afield on the record before us that we may label it clearly erroneous. *Craine*, 995 F.3d at 1157.

## III.

Defendant next argues his 60-month sentence is substantively unreasonable because it (1) is over twice as high as the high end of his 21 to 27 month advisory guidelines range, (2) accounts for matters, in particular the need for deterrence and likelihood of recidivism, already accounted for in his guidelines range, and (3) creates an unwarranted sentencing disparity between himself and other reentry offenders with a similar offense level and criminal history category. Our review is for an abuse of discretion and focuses on whether the length of the sentence is reasonable given the totality of the circumstances in light of the § 3553(a) factors. *United States v. Lucero,* 130 F.4th 877, 886 (10th Cir. 2025). A district court abuses its discretion when its sentence is arbitrary, capricious, whimsical, or manifestly unreasonable. *United States v. Valdez*, 128 F.4th 1314, 1317 (10th Cir. 2025). Our deferential standard of review comports with the reality that the sentencing guidelines are now advisory and a district judge is the only judge that looks a criminal defendant in

the eye at sentencing.  As the sentencing court, the district court "has access to, and greater familiarity with, the individual case and the individual defendant before [it] than the [Sentencing] Commission or the appeals court."  *Rita v. United States*, 551 U.S. 338, 357–58 (2007).  Thus, the district court "is in a superior position to find facts and judge their import under § 3553(a) in the individual case."  *Gall*, 552 U.S. at 51.

Unsurprisingly, Defendant complains much about the extent of the variance in his case.  Recall that here the district court varied upwards to a sentence of 60-months' imprisonment, over twice the high end of the 21 to 27 months advisory guidelines range.  Yet in *Gall*, the Supreme Court explained that "while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard."  *Id*. at 41.  Because the guidelines are no longer mandatory, "the range of choice dictated by the facts of the case is *significantly broadened*."  *Id.* at 59 (emphasis added).  To be sure, "a major [variance] should be supported by a more significant justification than a minor one."  *Id.* at 50.  "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore . . . consider the extent of the deviation from the Guidelines."  *Id.* at 47.  But the Supreme Court eschewed any "appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range," or, more importantly for present purposes, that requires "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications

10

required for a specific sentence."[1]  *Id.*

In considering the substantive reasonableness of the district court's 33-month variance from the high end of Defendant's advisory guidelines range, our recent decision in *United States v. Valdez*, 128 F.4th 1314 (10th Cir. 2025) is most instructive.  In that case, defendant pled guilty to conspiring to transport two aliens inside the United States in exchange for $1000 in violation of 8 U.S.C. § 1324(a)(1)(A)(ii).  Defendant's criminal history "some of which [was] recent" included a "false-reporting case, spousal-assault case, and two DWIs."  *Valdez*, 128 F.4th at 1316.  Defendant's advisory guidelines range was 4 to 10 months' imprisonment.  Both the Government and defendant asked for a sentence within the advisory guidelines range.  The district court sentenced defendant to 24-months' imprisonment, a sentence, like here, over twice the high end of the guidelines range.  On appeal, we upheld defendant's sentence as an exercise of the district court's sound discretion.  We explained that "the Guidelines do not necessarily [consider] . . . the trends of a defendant's criminal conduct, either in terms of the recency or seriousness of that criminal conduct.  Thus, a court may vary upward based on recent and serious criminal conduct."  *Id.* at 1318 (internal citation and quotation marks omitted).  We observed the district court was "justifiably concerned" about several § 3553(a) factors and this

---

[1]  The Supreme Court rejected the use of such rules because they "come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range."  *Gall*, 522 U.S. at 47.  The Court further observed that the mathematical formula "suffers from infirmities of application."  *Id.*  "On one side of the equation, deviations from the Guidelines range will always appear more extreme—in percentage terms—when the range itself is low, and a sentence of probation will always be a 100% departure regardless of whether the Guidelines range is 1 month or 100 years."  *Id.* at 47–48.

11

"individual defendant." *Id.* The district court "believed defendant's past sentences . . . failed to deter his criminal conduct. . . . Defendant did not accept responsibility but made excuses for his prior convictions—as demonstrated by his exchange with the district court at the sentencing hearing." *Id.* Indeed, "[d]efendant's explanations for his prior criminal history troubled the district court, including that his wife didn't want to testify against him in the assault case and his explanations for his DWIs." *Id.* at 1316.

Given our decision in *Valdez* approving a variance over twice the high end of the guidelines range based in large part on defendant's recent and serious criminal misconduct prior to his alien-transporting offense, we are hard pressed to conclude Defendant's sentence here is manifestly unreasonable. Comparing the facts of the present matter with the facts in *Valdez* reveals the two cases have much in common, including evasive defendants. One critical distinction exists between the cases however, namely that the justifications for the district court's substantial upward variance here are more compelling than those justifications we held sufficient to support a similar upward variance in *Valdez*. Unlike in *Valdez*, where defendant's criminal history consisted of two DWIs and a false reporting case, all non-violent offenses, and one incident of spousal assault, Defendant's criminal history here reveals a *pattern* of violent conduct within the United States. In 1999 Defendant was convicted in state court of destruction of property and disorderly conduct. In 2001, Defendant was convicted in state court of assault arising out of an attempted robbery. In 2002, Defendant was convicted again in state court of manslaughter after an initial charge of murder was dropped. After his release from prison in 2005, Defendant was deported only to return shortly thereafter. In 2007, Defendant was convicted in state

court of battery and attempted kidnapping arising out of his encounter with L.P. Defendant spent the next twelve years in prison before his release in 2019. Undeterred by his numerous criminal prosecutions in the United States, Defendant attempted to reenter the country in 2023.

Our decision in *United States v. Vasquez-Garcia*, 130 F.4th 891 (10th Cir. 2025), handed down less than one month after *Valdez*, also informs our analysis. In that case, defendant, like Defendant here, was charged with illegal reentry in violation of 8 U.S.C. § 1326. Both the Government and defendant requested a within-guideline sentence. Defendant's criminal history consisted of the following convictions: (1) petty theft in 2005, (2) driving under the influence and without a license in 2006, and (3) child abuse involving attempted sexual abuse in 2018. While undoubtedly serious, this history again was not as violent as the present Defendant's. At sentencing, defendant offered much the same explanation for his past violent conduct as does Defendant here. He did not object to the PSR but still told the court he had not committed sexual abuse, did not remember what had happened because he was intoxicated, and never intended to molest or abuse his stepdaughter. Based largely on defendant's prior child-abuse conviction alone, the district court varied upwards 18 months from an advisory guidelines range of 24 to 30 months and imposed a 48-month sentence of imprisonment for his first reentry offense.

On appeal, we rejected defendant's argument that because the district court gave inordinate weight to his child-abuse conviction when deciding to impose a substantial upward variance, his sentence was substantively unreasonable. We held the district court "did not commit an error . . . by finding [defendant's] criminal history supported an upward

13

variance notwithstanding that it was used to calculate his guidelines range." *Vazquez-Garcia*, 130 F.4th at 900. We reasoned that the conduct underlying defendant's child-abuse conviction and his evasive explanations for such conduct were "relevant to the seriousness of [defendant's] reentry offense because the crime of illegal reentry by an alien who has committed a violent felony is a serious one." *Id.* at 902 (internal quotation marks omitted). We further explained the district court reasonably treated the sexual abuse underlying the child-abuse conviction as relevant to other § 3553(a) factors in addition to the seriousness of the reentry offense. These factors included the history and characteristics of defendant and the need to protect the public from further crimes he might commit. We concluded that "the district court's focus on the conduct underlying [defendant's] child-abuse conviction was not 'manifestly unreasonable' because that conduct was directly relevant to multiple § 3553(a) factors." *Id.* at 903. *Vazquez-Garcia* teaches us that the district court in our case did not abuse its discretion by giving inordinate weight to Defendant's sexual battery of L.P. because this offense coupled with Defendant's troubling explanation for it was relevant to the seriousness of his illegal-reentry offense as well as a number of other § 3553(a) factors.

A third recent case that warrants our attention, handed down one day prior to *Vazquez-Garcia*, is *United States v. Lucero*, 130 F.4th 877 (10th Cir. 2025). There, defendant pled guilty to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1) after threatening his ex- girlfriend, her mother, and two children with a loaded 9mm handgun. The district court varied upwards from an advisory guidelines range of 57 to 71 months and sentenced defendant to the statutory maximum of

14

10 years or 120-months imprisonment.  We affirmed on appeal.  Among other things, defendant argued, just as Defendant does here, that to justify the variance the district court improperly relied on the criminal history already accounted for in the calculation of his guidelines range.  Observing as we did in both *Valdez* and *Vazquez-Garcia*, that "prior criminal history can be considered relevant for multiple § 3553(a) factors," we rejected defendant's argument.  *Lucero,* 130 F.4th at 887.  We explained "[t]hat argument is unavailing since '[u]nder current precedent, district courts have broad discretion to consider particular facts in fashioning a sentence under 18 U.S.C. § 3553(a), even when those facts are already accounted for in the advisory guidelines range.'"  *Lucero,* 130 F.4th at 884 (quoting *United States v. Barnes*, 890 F.3d 910, 921 (10th Cir. 2018)).

All this leaves us with Defendant's final argument, namely that his variance creates an unwarranted sentence disparity.  In support of his argument, Defendant points to Judiciary Sentencing Information (JSIN) data for defendants sentenced under the same guideline at the same offense level and criminal history category within the last five years.  Indeed, § 3553(a)(6) instructs district courts to consider "the need to avoid unwarranted sentencing disparities among defendants with *similar* records who have been found guilty of similar conduct."  (emphasis added).  But we explained in *Valdez*, 188 F.4th at 1319, that "bare national statistics do not shed light on the extent to which the sentences that the statistics pertain to involve defendants that are similarly situated to Defendant." (internal brackets omitted) (quoting *United States v. Garcia*, 946 F.3d 1191, 1215 (10th Cir. 2020)).  Subsequently, in *Lucero,* 130 F.4th at 887, we reiterated:  "[R]eports on national averages are not dispositive because they do not provide information into a defendant's individual

15

history and characteristics." *Contra id.* at 890–91 (McHugh, J., concurring). Here Defendant fails to show how he is similarly situated with those of the national average. Accordingly, like Defendant's other arguments, Tenth Circuit precedent forecloses Defendant's disparity argument.

\* \* \*

Considering our case precedents, applying the deferential standard of review applicable to sentencing challenges, and crediting the district court's consideration of the multiple § 3553(a) sentencing factors, we conclude the court did not abuse its discretion in imposing a 60-month sentence of imprisonment on Defendant for his third unlawful entry following a series of convictions for violent crimes in the United States. Instead, the length of Defendant's sentence is reasonable in view of the totality of the circumstances as those circumstances bear upon the § 3553(a) factors. The district court reasonably treated the sexual assault underlying his battery and kidnapping offenses as well as his entire history of violent misconduct as bearing upon the nature and seriousness of his reentry offense. *See* 18 U.S.C. § 3553(a)(1), (2)(A); *Vasquez-Garcia*, 130 F.4th at 902–03. Also relevant was Defendant's denial of any serious wrongdoing after he had spent 12 years in prison as a consequence of his encounter with L.P. *See id.* Defendant's explanations for the sexual assault—he was intoxicated, he never had sex with L.P., and L.P. had set him up because he refused to pay her for sex—fell on deaf ears. This is understandable given Defendant presented no evidence of his rehabilitation other than his unsubstantiated claims that he no longer drinks alcohol and has found religion. The pattern of violent conduct within the United States in which Defendant engaged prior to his most recent apprehension at the

16

border and his evasiveness at sentencing also bore upon Defendant's history and characteristics.  18 U.S.C. § 3553(a)(1).  Finally, the need for Defendant's sentence to promote respect for the law (for which he has shown little, if any respect to this point), provide just punishment for the offense, afford adequate deterrence, and protect the public from further violent crimes of Defendant justified the upward variance in this case.[2]

For all the foregoing reasons, Defendant's 60-month sentence of imprisonment is AFFIRMED.

---

[2] Notably, Defendant does *not* ask us to remand so that the district judge may further explain her decision to vary upwards from Defendant's advisory guidelines range. Rather Defendant says his 60-month sentence is unreasonable as a matter of law. He requests an outright reversal and a new sentencing hearing before another district judge.

No. 23-2177, *United States v. Cortez*

**McHUGH,** Circuit Judge, concurring:

I join in the majority decision, but I write separately to address my concerns about our precedent on the use of national sentencing statistics to avoid unwarranted sentencing disparities.

Section 3553(a)(6) requires consideration of "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In analyzing this factor, the district court found "[t]here's been no showing that there's a sentencing disparity in this case." ROA Vol. III at 37. But the PSR cited national statistics showing that defendants with the same offense level and criminal history category as Mr. Cortez received average and median sentences of 15 months. Those statistics came from the Sentencing Commission's Judiciary Sentencing Information ("JSIN") database and were specific to defendants sentenced under U.S.S.G. § 2L1.2, which is a Guideline used solely for illegal reentry offenses.

We have previously stated that consideration of § 3553(a)(6) may entail reviewing "comparative data." *United States v. Crosby*, 119 F.4th 1239, 1251 (10th Cir. 2024) (quotation marks omitted). We have also emphasized that this factor is primarily concerned with avoiding unwarranted "*nationwide* disparities," indicating that national statistics such as the JSIN data may be relevant. *United States v. Garcia*, 946 F.3d 1191, 1215 (10th Cir. 2020). In fact, the Sentencing Commission created the JSIN database in 2021 "at the request of judges" to "provide[] quick online access

to sentencing data for *similarly situated individuals*." United States Sentencing Commission, *Annual Report 2023*, https://www.ussc.gov/about/annual-report-2023 (emphasis added) (last visited May 22, 2025); *see also United States v. Brewster*, 116 F.4th 1051, 1062 (9th Cir. 2024) ("The JSIN data came from a reliable source designed specifically for judges to use during sentencing to fulfill their obligations under § 3553(a)(6).").

But in *Garcia,* we held that "bare national statistics do not shed light on the extent to which the sentences that the statistics pertain to involve defendants that are similarly situated." *Garcia*, 946 F.3d at 1215. The defendant in *Garcia* was convicted as a felon in possession of a firearm and, at sentencing, produced nationwide statistics covering all "firearms defendants" to argue that an upward variance would produce a disparate sentence. *Id.* at 1196, 1214. We concluded that those statistics did not speak to whether there was a disparity under § 3553(a)(6) because they did not survey defendants with "a similar longstanding pattern of flagrant and serious lawbreaking, which not infrequently involved unlawful possession of inherently dangerous firearms." *Id.* at 1215. Importantly, neither *Garcia* nor § 3553(a)(6) require defendants to produce statistics about comparator defendants with *identical* records.

In my view, there is apparent tension in our precedent that can be resolved by examining the important differences between the relevant data. Unlike the broad statistics for all "firearms defendants" in *Garcia*, 946 F.3d at 1214, the JSIN statistics here survey defendants guilty of the same conduct as Mr. Cortez and who have

2

similar records. *See* ROA Vol. II at 15 (noting these nationwide statistics covered "1655 defendants whose primary guideline was § 2L1.2, with a Final Offense Level of 15 and a Criminal History Category of II"). The statistics are limited to defendants sentenced with reference to U.S.S.G. § 2L1.2, a Guideline used solely for defendants found guilty of "unlawfully entering or remaining in the United States." U.S.S.G. § 2L1.2. And they include only defendants in the same criminal history category as Mr. Cortez, Category II. This category is calculated by assigning numerical values to a defendant's prior convictions and sentences which, once totaled, cause the defendant to be placed in a specific category. *See* U.S.S.G. § 4A1.1. Thus, defendants in the same criminal history category should have *similar* criminal backgrounds because they committed a similar number of offenses and spent similar amounts of time in custody.

As the majority correctly notes, *see* Maj. Op. at 15, *Garcia* states that "bare national statistics do not shed light on the extent to which the sentences that the statistics pertain to involve defendants that are similarly situated to [the defendant]," *Garcia*, 128 F.4th at 1319. I would place this statement in the context of *Garcia* itself, in which the defendant was convicted of a felon-in-possession charge and then relied on national sentencing statistics that lumped together all "firearms defendants." *Id.* at 1214. The statistics here, by contrast, solely involve defendants convicted of illegal reentry and sentenced with reference to U.S.S.G. § 2L1.2, with identical offense levels and criminal history categories. In my view, considering such statistics is consistent with § 3553(a)(6). If "bare national statistics" are irrelevant, yet at the

3

same time § 3553(a)(6) is concerned with "*nationwide* disparities," *Garcia*, 946 F.3d at 1215, it is unclear to me what further information a defendant could provide that would be relevant to this factor. *See* 18 U.S.C. § 3553(a)(6) (requiring district courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). Thus, I would not construe our precedent as requiring that all national statistics should be treated alike.

Here, the JSIN statistics encompass defendants with the same criminal history score—meaning defendants with *similar*, but not identical, records—who were found guilty of the same conduct, unauthorized presence in the United States. The statistics show that the district court's upward variance to 60 months was four times greater than the average national sentence given to similarly situated offenders of 15 months. *See* App. Vol. II at 15. In my view, not all sentencing statistics are alike, and some may provide an important data point when selecting a sentence.

4