FILED
United States Court of
Appeals
Tenth Circuit

February 28, 2024

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MATTHEW WARE,

    Defendant - Appellant.

No. 22-6203

_____

**Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 5:21-CR-00323-F-1)**
_____

Submitted on the briefs:[*]

Virginia L. Grady, Federal Public Defender, and Kathleen Shen, Assistant Federal Public Defender, Office of the Federal Public Defender, Denver, Colorado, on the brief for Defendant-Appellant.

Robert J. Troester, United States Attorney, Julia E. Barry, Senior Litigation Counsel/Assistant U.S. Attorney, Oklahoma City, Oklahoma, and Kristen Clarke, Assistant Attorney General, Tovah R. Calderon and Alisa C. Philo, Attorneys, Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C., on the brief for Plaintiff-Appellee.

_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Before **ROSSMAN**, **KELLY**, and **MURPHY**, Circuit Judges.

_____

**ROSSMAN**, Circuit Judge.

_____

Matthew Ware raises a single issue in this direct criminal appeal: the substantive reasonableness of his sentence. Mr. Ware was convicted by a jury of two counts of deprivation of rights under color of law in violation of 18 U.S.C. § 242 and one count of deprivation of rights under color of law in violation of 18 U.S.C. § 242 and 18 U.S.C. § 2. The district court imposed concurrent terms of 46 months of imprisonment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

**A**

Mr. Ware was a correctional officer at the Kay County Detention Center (KCDC) in Newkirk, Oklahoma.[1] In 2017, he served as a Lieutenant at the KCDC, and by 2018, Mr. Ware was both Lieutenant and Acting Captain. These roles gave him "supervisory authority over all of the [correctional officers] at the KCDC." R.II at 60. The charges brought against

_____

[1] We take these uncontested facts, as does Mr. Ware, from the presentence investigation report and trial testimony.

Mr. Ware arise out of two incidents, one in May 2017 and the other in January 2018.

At the time of the 2017 incident, the KCDC housed inmates and pretrial detainees associated with certain gangs in pods, according to Security Threat Groups (STG). The STG pod on the upper level of the facility housed gang-affiliated Black inmates and pretrial detainees. Inmates and detainees associated with the Aryan Brotherhood were housed on the lower level. Due to the "[v]olatile" relationship between the gang members on the two floors of the STG pod, the individuals were separated. R.III at 141–42. These inmates were never allowed out of their cells and into the common area at the same time.

On May 18, 2017, Mr. Ware ordered the transfer of two Black pretrial detainees housed on the upper level of the STG pod, D.W. and M.M., to the bottom level of the STG pod. Mr. Ware then ordered KCDC correctional officers to open all the cells on the first floor of the STG pod. Other correctional officers expressed concerns that "let[ting] them out together [would result in] a fight," because the first floor of the STG pod housed members of the Aryan Brotherhood. R.III at 145. Mr. Ware maintained his course of action, despite these expressed concerns. A fight ensued. D.W. and M.M. were physically attacked by other inmates.

3

The second incident happened on January 31, 2018. A pretrial detainee, C.D., sent Mr. Ware a note critical of his leadership at the KCDC. Mr. Ware then ordered C.D. removed from his cell and handcuffed to a bench in the central hallway. The handcuffs were properly secured to C.D.'s wrists, but at Mr. Ware's direction, C.D. was re-handcuffed. The repositioning of the handcuffs caused his body to be "stretched out with one hand to his left almost as far as it could go and one hand to the right almost as far as it could go." R.III at 351. C.D. was left in this position for about an hour and a half, resulting in pain, redness, indentations, and peeling skin on his wrists.

**B**

Based on these events, the government prosecuted Mr. Ware. Counts 1 and 2 of the indictment charged Mr. Ware with willfully depriving D.W. and M.M. of their rights to be free from a correctional officer's deliberate indifference to a substantial risk of serious harm while acting under color of law in violation of 18 U.S.C. § 242. Count 3 charged Mr. Ware with willfully depriving C.D. of his right to be free from the excessive use of force by a correctional officer while acting under color of law in violation of 18 U.S.C. § 242 and 18 U.S.C. § 2. The case proceeded to a jury trial in the Western District of Oklahoma, and Mr. Ware was convicted on all charges.

4

The presentence investigation report (PSR) calculated Mr. Ware's total offense level as 21:

- Base Offense Level – § 242 violation **12**
- Specific Offense Characteristics – § 2H1.1(b)(1) **+6**
- Increase in Offense Level – § 3D1.4[2] **+3**
- Acceptance of Responsibility – § 3E1.1(a)[3] **0**
- Total Offense Level **21**

R.II at 70–72. At criminal history category I, Mr. Ware's advisory Guidelines range was 37 to 46 months in prison.

Mr. Ware sought a downward variance under 18 U.S.C. § 3553(a). Mr. Ware argued his history and characteristics—including his military service, steady employment history, family ties and responsibilities, and lack of criminal history—supported a sentence below the advisory Guidelines range. He emphasized he "will never work in this field again now that he is a federally convicted felon." R.I at 271. This consequence of his criminal conviction, he insisted, reflects the seriousness of the offense and

---

[2] The PSR assigned each count to a group under U.S.S.G. § 3D1.4. A combined adjusted offense level of 21 resulted "by taking the offense level applicable to the Group with the highest offense level and increasing the offense level by the amount indicated in the table at [U.S.S.G. § 3D1.4]." R.II at 72.

[3] The PSR explains because Mr. Ware was found guilty at trial, "a statement regarding acceptance of responsibility was not provided," and the United States Probation Office thus concluded "[a]n adjustment for acceptance of responsibility is not warranted in this case." R.II at 69.

demonstrates adequate deterrence. Mr. Ware also maintained his lack of criminal history demonstrated a "very little likelihood of any further crimes and . . . a very low need to protect the public from Mr. Ware in the future." R.I at 272. He requested time served—which was then around seven months—followed by three years of supervised release.

The government opposed the variance request. According to the government, Mr. Ware "abused his position of power and issued orders that caused harm to three people who he was charged with protecting," yet he "expressed no remorse for his actions." R.III at 488–89. "A sentence at the high end of the applicable Guidelines [range]," the government argued, "will most appropriately capture the significance of Mr. Ware's conduct, promote respect for the law, and provide for just punishment." R.I at 260.

At the sentencing hearing, the district court adopted the recommendation in the PSR and calculated Mr. Ware's Guidelines range based on a total offense level of 21 and a criminal history category of I, yielding a Guidelines range of 37 to 46 months of imprisonment. After hearing arguments from Mr. Ware and the government, the district court denied the requested downward variance.

The district court began by acknowledging the "countervailing considerations . . . in play." R.III at 494–95. The court explained "Mr. Ware was knowingly and intentionally cruel to [D.W., M.M., and C.D.],"

6

which the district court considered an "aggravating fact." R.III at 495. Mr. Ware's "breathtaking cruelty" was further troubling, the district court reasoned, due to Mr. Ware's role as "a law enforcement officer in a management position." R.III at 482, 495. The district court found Mr. Ware, a commanding law enforcement officer, acted "so utterly in opposition and in disregard in the extreme sense of [his] oath." R.III at 496. On this basis, the district court concluded "[t]he need to reflect the seriousness of the offense cuts rather strongly against Mr. Ware." R.III at 497. The district court explained "the need to promote respect for the law is closely related to the need to afford adequate deterrence" in this case:

> [P]eople who have the degree of responsibility that Matthew Ware had and do so in their capacity as law enforcement officers must respect the law. . . . And . . . . [l]aw enforcement officers who would be tempted to be cruel, as Mr. Ware was so unquestionably cruel, need to be deterred by some understanding that there is a chance that you're going to be investigated and prosecuted . . . . And if you are investigated and successfully prosecuted, there will be consequences.

R.III at 498.

At the same time, the district court observed "we have two different Matthew Wares in one sense." R.III at 496. Mr. Ware's "substantial ties to the community," the district court explained, stood in "stark contrast" to the conduct underlying his offenses:

7

> He has shown his support to his community and to community organizations. He has served his family and his country and his community in the military. He has been a trusted family member entrusted with and around vulnerable individuals like children.

*Id.* The court also reasoned Mr. Ware's history and characteristics, including his lack of criminal history, "cut rather strongly in his favor." R.III at 497. And "the need to prevent further offenses of this defendant is [not] a significant factor against him." R.III at 498.

"Taking into account all of those considerations," the district court found "the factors in this case that assume greater prominence than others" are "the nature and circumstances of the offense committed by a law enforcement officer . . ., the need to promote respect for the law, and the need for adequate deterrence." R.III at 499. Under these circumstances, the district court concluded "a sentence of 46 months of incarceration followed by three years of supervised release is a sentence that is sufficient but not greater than necessary to achieve the statutory objectives of sentencing." R.III at 500.

Mr. Ware timely appealed.

## II

"[A]ppellate review for reasonableness includes both a procedural component, encompassing the method by which a sentence was calculated,

as well as a substantive component, which relates to the length of the resulting sentence." *United States* v. *Smart*, 518 F.3d 800, 803 (10th Cir. 2008). Mr. Ware challenges only the substantive reasonableness of his sentence.

"Substantive reasonableness focuses on the length of the sentence and requires that sentences be neither too long nor too short." *United States* v. *Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017). "When reviewing a sentence for substantive reasonableness, we focus on 'whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a).'"[4] *United States* v. *Cookson*, 922 F.3d 1079, 1091 (10th Cir. 2019) (quoting *United States* v. *Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009)). "A sentencing decision is substantively unreasonable if it 'exceed[s] the bounds of permissible choice, given the facts and the applicable law.'" *United States* v. *Chavez*, 723 F.3d 1226, 1233 (10th

---

[4] Under 18 U.S.C. § 3553(a), district courts are required to consider seven factors in sentencing: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment (retribution), (b) deterrence, (c) incapacitation, and (d) rehabilitation; (3) the kinds of sentences available; (4) the Sentencing Commission Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution." *United States* v. *Cookson*, 922 F.3d 1079, 1092 (10th Cir. 2019) (citation and quotation marks omitted).

Cir. 2013) (quoting *United States* v. *McComb,* 519 F.3d 1049, 1053 (10th Cir. 2007)).

"We review substantive reasonableness for an abuse of discretion." *United States* v. *Williams*, 10 F.4th 965, 977 (10th Cir. 2021); *see also United States* v. *Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) ("[S]ubstantive reasonableness review . . . looks to whether the district court abused its discretion in weighing permissible § 3553(a) factors in light of the 'totality of the circumstances.'" (quoting *Gall* v. *United States*, 522 U.S. 38, 51 (2007))). "We do not reweigh the sentencing factors but instead ask whether the sentence fell within the range of 'rationally available choices that facts and the law at issue can fairly support.'" *United States* v. *Blair*, 933 F.3d 1271, 1274 (10th Cir. 2019) (quoting *United States* v. *Martinez*, 610 F.3d 1216, 1227 (10th Cir. 2010)); *see also Smart*, 518 F.3d at 808 ("We may not examine the weight a district court assigns to various § 3553(a) factors, and its ultimate assessment of the balance between them, as a legal conclusion to be reviewed de novo."). "[W]e will defer to the district court's judgment so long as it falls within the realm of . . . rationally available choices." *United States* v. *Durham*, 902 F.3d 1180, 1236 (10th Cir. 2018) (quoting *McComb*, 519 F.3d at 1053).

As Mr. Ware acknowledges, a sentence within the advisory Guidelines range is "entitled to a presumption of reasonableness." *United States* v.

*Maldonado-Passage*, 56 F.4th 830, 842 (10th Cir. 2022). A "[d]efendant may rebut this presumption by demonstrating the sentence is unreasonable when viewed against the factors described in § 3553(a)." *United States* v. *Richards*, 958 F.3d 961, 968 (10th Cir. 2020) (citing *United States* v. *Craig*, 808 F.3d 1249, 1261 (10th Cir. 2015)). Mr. Ware has not done so here.

Mr. Ware does not dispute the district court considered his personal history and characteristics and lack of criminal history. *See* Opening Br. at 9–10 ("To be sure, the district court did mention these factors when fashioning it sentence . . . . [and] acknowledged that Mr. Ware had no criminal history and was not likely to recidivate . . . ."). His only assignment of error, then, is these factors "deserved more weight" than the district court gave them. Opening Br. at 10. He contends the district court "placed inadequate weight on the numerous mitigating factors supporting a shorter sentence" and thus "overlooked that a shorter sentence would have served as an adequate, and equally effective, general deterrent for similar misconduct by other law enforcement officers." *Id.* at 8. Because the district court failed to give adequate weight to Mr. Ware's "commendable personal characteristics" and lack of criminal history, Mr. Ware maintains, his resulting sentence is "unreasonably harsh and substantively unreasonable." *Id.* at 9–10.

11

But "in arguing that the district court did not 'appropriately weigh' these considerations, [Mr. Ware] simply asks us to re-weigh factors already presented to the district court—something we cannot and will not do." *United States* v. *Budder*, 76 F.4th 1007, 1017 (10th Cir. 2023) (citation omitted). "[R]eweighing the [§ 3553(a)] factors is beyond the ambit of our review" for substantive reasonableness. *United States* v. *Lawless*, 979 F.3d 849, 856 (10th Cir. 2020). And we must defer to a district court's determination of the weight to be afforded to the statutory sentencing factors. *Smart*, 518 F.3d at 808. "For our purposes, it is enough that the district court thoroughly weighed each of these § 3553(a) factors, reached a logical conclusion, and detailed its reasoning." *Lawless*, 979 F.3d at 856.

Thus, we conclude the sentence imposed here—which is within Guidelines and presumptively reasonable, *see Maldonado-Passage*, 56 F.4th at 842—was one of the "rationally available choices" before the district court, *Durham*, 902 F.3d at 1236 (quoting *McComb*, 519 F.3d at 1053). While the district court had the discretion to grant Mr. Ware a downward variance based on his community ties and lack of criminal history, it did not abuse its discretion by declining to do so.

### III

The judgment of the district court is **AFFIRMED**.