**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**December 10, 2025**

**Jane K. Castro**
**Chief Deputy Clerk**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAIME VEGA-ACOSTA,

Defendant - Appellant.

No. 25-3011
(D.C. No. 5:23-CR-40012-TC-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

Jaime Vega-Acosta appeals from the district court's decision to upwardly vary from the advisory Guidelines range to impose a 48-month sentence for cyberstalking. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

## BACKGROUND

In 2016 Mr. Vega-Acosta briefly had an intimate relationship with M.C., which M.C. ended when she discovered he was married. He occasionally reached out

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

to M.C. over the next few years, but she did not respond. In 2021, however, Mr. Vega-Acosta became divorced. In April 2021 he and M.C. reconnected and had an intimate relationship for a short time, but he got upset when she told him she had a sexually transmitted disease. The two maintained contact only sporadically.

In January and February 2022, M.C. received multiple disturbing text messages containing sexual and hateful content. Then in April she received uncharacteristically harsh text messages from Mr. Vega-Acosta. Around that time, she also began getting explicit, vulgar texts and phone calls from men who said they were responding to her internet profiles offering sex. Some mentioned her 10-year-old daughter and suggested having sex with her as well as M.C. Some identified M.C.'s home address. Some mentioned plans for men to come to her house in groups. And some men went beyond sending messages and actually came to M.C.'s house, believing she was offering sex. While she was dealing with these incidents, she also received a visit from the Kansas Department of Children and Families (KDCF), which had received an anonymous report alleging that M.C. was often drunk and high and neglected her daughter.

But M.C. had not created profiles offering sex on those internet sites. She had not put her photo, address, and telephone number online. She had not communicated with strangers, inviting them to her house for sex. Most particularly, she had not put her daughter's photo on those sites or named her daughter's school. Mr. Vega-Acosta had. He also had called KDCF.

2

Mr. Vega-Acosta was indicted on one count of cyberstalking, in violation of 18 U.S.C. § 2261A(2)(A) and (B). He pleaded guilty without a plea agreement. The presentence report (PSR) calculated the offense level at 15: a base offense level of 18, plus a two-level increase for a pattern of activity involving stalking, threatening, or harassing the same victim, less two levels for being a zero-point offender and three levels for accepting responsibility. With a criminal-history category of I and an offense level of 15, the advisory Guidelines range was 18 to 24 months. The government advocated for a sentence at the top of the Guidelines range, while Mr. Vega-Acosta requested a downward variance to 13 months' imprisonment.

M.C. offered a written victim-impact statement in which she described how Mr. Vega-Acosta's actions had terrified her, causing her to install a security system and buy a Taser and a guard dog. Ultimately, taking the advice of the Federal Bureau of Investigation, she had to move and sell her house. At the sentencing hearing, M.C. read her victim-impact statement and discussed the significant psychological and financial damages Mr. Vega-Acosta had caused, both to her and to her daughter. In addition, M.C.'s mother addressed the court regarding emotional and behavioral changes in her daughter and granddaughter.

Mr. Vega-Acosta's counsel urged the court to consider the low risk of recidivism. She stated that at the time of the instant offense, he was recently divorced, unemployed, and suffering from depression. She described his family support, his efforts to improve his mental health, his compliance with the terms of pretrial release, and his steady employment as a journeyman electrician. Also, she

described challenges he faced having been born with a cleft palate and cleft lip, which caused him to be bullied while he was growing up and still required him to undergo medical procedures that would be affected by an extended term in custody. Counsel acknowledged that a probation-only sentence would not be appropriate, but she argued that an upward variance would not be appropriate either.

After hearing allocution, the district court upwardly varied to impose a sentence of 48 months' imprisonment. It already had expressed concern that Mr. Vega-Acosta's behavior was "eye-openingly alarming," particularly because it involved potential injury to a child, and had asked "how do I process through that with anything other than just wild moral outrage, [and] fear for the community?" R. vol. III at 41. In explaining its decision to vary upward, the court found "the elements of malice and vindictiveness and nastiness both personally and safety-wise is extreme." *Id.* at 53. And it found the crime was outside the heartland. *Id.* at 54.

Evaluating the factors set forth in 18 U.S.C. § 3553(a),[1] the district court summarized the nature and circumstances of the offense and Mr. Vega-Acosta's history and characteristics:

---

[1] Section 3553(a) requires the district court to consider the following seven factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) just punishment (retribution), (b) deterrence, (c) incapacitation, and (d) rehabilitation; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Guidelines; (5) Sentencing Commission policy

This offense involves Mr. Vega-Acosta creating a false dating profile which provided intimate personal information about the victim. The victim had unknown men show up to her residence where she and her young child lived. She received dozens of vulgar and threatening text messages based on the information Mr. Vega-Acosta provided in his fictitious profiles. I will also note that those were accompanied by explicit and express text messages of physical conduct and vulgar and threatening messages that are beyond the pale.

Mr. Vega-Acosta . . . experienced a relatively pleasant childhood, moving from Mexico at a young age. I note that he was the victim of bullying due to facial surgeries, but he has education, college education, and a significant employment history but struggles with mental health and substance abuse in his adult life.

I note that he has tried to be involved with his children's lives as much as possible, but I also think the aspect of being a parent yet subjecting another child to this threat is just unbearable.

*Id.* at 55-56. It recognized that M.C. had requested a 10-year sentence, but it explained that the statutory maximum was five years and that its decision to double the recommended Guidelines range was a significant step for it to take. The court also stated the sentence was sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide a just punishment. The court stated its hope that the sentence provided adequate deterrence to Mr. Vega-Acosta and to others in the community and that it would protect the public from Mr. Vega-Acosta as well.

---

statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need for restitution.

*United States v. Rocha*, 145 F.4th 1247, 1270 (10th Cir. 2025) (internal quotation marks omitted).

Mr. Vega-Acosta objected that the sentence was unreasonable both procedurally, because the district court did not address his argument that he posed a low recidivism risk, and substantively, because it was greater than necessary to achieve the statutory sentencing factors and created unwarranted sentencing disparities. The district court responded that it "did take [the mitigating] factors into consideration," but it "just thought that they impacted [the] decision nothing in light of all of the other significant exacerbating factors that were present." *Id.* at 61. It stated, "In fact, I think I mentioned to you I actually think that those mitigating factors you identified, including the pro-social activities and things like that, actually undermine your argument and support my sentence." *Id.* The court subsequently entered judgment, including a statement explaining its reasons for the sentence.

## DISCUSSION

On appeal, Mr. Vega-Acosta challenges the sentence as both procedurally and substantively unreasonable. *See United States v. Vazquez-Garcia*, 130 F.4th 891, 897 (10th Cir. 2025) ("Reasonableness review is a two-step process comprising a procedural and a substantive component." (internal quotation marks omitted)).

## I.    Procedural Reasonableness

Procedural reasonableness includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). Thus, in reviewing procedural reasonableness, we consider "whether

the district court committed any error in calculating or explaining the sentence." *Vazquez-Garcia*, 130 F.4th at 897 (internal quotation marks omitted).

Mr. Vega-Acosta suggests three reasons to find the sentence procedurally unreasonable. As he acknowledges, he did not raise any of those objections in the district court. We therefore review only for plain error. *See id.* "We will reverse on plain-error review only if (1) there is error; (2) that is plain; (3) that affects substantial rights, or in other words, affects the outcome of the proceeding; and (4) substantially affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Capps*, 112 F.4th 887, 896 (10th Cir. 2024) (internal quotation marks omitted), *cert. denied*, 145 S. Ct. 1219 (2025). "An error is plain if it is clear or obvious under current, well-settled law, in that there is precedent directly on point from the Supreme Court or the Tenth Circuit, or there is a consensus in the other circuits." *United States v. Romero*, 132 F.4th 1208, 1218 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 2025 WL 2824088 (U.S. Oct. 6, 2025) (No. 24-7520). The error must be "so clear or obvious that it could not be subject to any reasonable dispute." *United States v. Berryhill*, 140 F.4th 1287, 1302 n.3 (10th Cir. 2025) (emphasis and internal quotation marks omitted).

### A. The court did not plainly err in failing to explain why it discounted evidence Mr. Vega-Acosta intended to be mitigating.

Mr. Vega-Acosta first argues that the district court plainly erred in "giving all of Mr. Vega-Acosta's mitigating evidence either 'nothing' or aggravating weight without adequately explaining why." Aplt. Opening Br. at 26. In his opening brief,

7

he contends the error in evaluating the evidence was plain under § 3553(a)(1) and "authorities [that] demonstrate that evidence such as Mr. Vega-Acosta presented is ordinarily understood to be mitigating." *Id.* at 27. He further contends the error in failing to offer an adequate explanation was plain under § 3553(c)(2), 28 U.S.C. § 994(w)(1)(B), and *Rita v. United States*, 551 U.S. 338 (2007), "which together obligate district courts to offer a sufficient explanation 'to satisfy the appellate court that [the district court] has considered the parties' arguments and has a reasoned basis for' imposing an upward-variant sentence," Aplt. Opening Br. at 27 (quoting *Rita*, 551 U.S. at 356). In his reply brief, he clarifies that his "argument is not that the district court failed to consider Mr. Vega-Acosta's evidence or give it any particular weight," but instead "is that the district court failed to adequately explain its counter-intuitive assignment of *nothing* weight or *aggravating* weight to that evidence." Aplt. Reply Br. at 5. He does not, however, establish the district court plainly erred in this regard.

Section 3553(c)(2) requires the district court to "state in open court the reasons for its imposition of the particular sentence" and, for a sentence outside the Guidelines range, "the specific reason" why the sentence is outside the range. To satisfy § 3553(c)(2), "a district court must describe the salient facts of the individual case, including particular features of the defendant or of his crime, and must explain for the record how these facts relate to the § 3553(a) factors." *United States v. Clark*, 981 F.3d 1154, 1168 (10th Cir. 2020) (internal quotation marks omitted). "[A] mere allusion to the statutory factors, without an accompanying discussion of their

8

application to the facts at hand, lacks the specificity to satisfy this duty." *United States v. Mendoza*, 543 F.3d 1186, 1193 (10th Cir. 2008).

In addressing Mr. Vega-Acosta's objection that the court had not addressed his low recidivism risk, the court referred back to its remarks during the parties' arguments. *See* R. vol. III at 61 ("I think I mentioned to you I actually think that those mitigating factors that you identified, including the pro-social activities and things like that, actually undermine your argument and support my sentence."). During that earlier discussion, picking up on a point the prosecutor made, the court had stated that unlike the disadvantaged backgrounds of many defendants who came before the court, "We have a college-educated, world-traveling rock climber who has a steady job and still does this. . . . [T]o me, that makes it more threatening to the public, no?" *Id.* at 43-44. When counsel responded that Mr. Vega-Acosta had "significant mitigation" in his background given that he "really struggled to build healthy interpersonal relationships with others from a young age," the court seemed skeptical, noting "[h]e was married and had a relationship with another woman in addition." *Id.* at 44.

Also during that earlier discussion, the court had characterized Mr. Vega-Acosta's behavior as "eye-openingly alarming," particularly given it involved M.C.'s daughter: "The child did nothing and the child's life was in danger. . . . [T]hat's alarming." *Id.* at 41. The court indicated that it had newly apprehended from information at sentencing that M.C.'s daughter and Mr. Vega-Acosta actually knew each other and had some sort of relationship. It commented, "And, again, I guess

9

part of what is motivating me is not only did he have, for lack of a better word, a lover's quarrel, but he also intentionally went after the minor daughter of not some random person but someone he actually had a knowing relationship with.  Does that make sense?" *Id.* at 45.  And he did so despite his status as a parent who has loving relationships with his own children; as the district court explained in imposing the sentence, "I also think the aspect of being a parent yet subjecting another child to this threat is just unbearable." *Id.* at 56.

Further, in its later statement of reasons, the district court identified four statutory factors in support of the sentence:  the nature and circumstances of the offense; the need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; the need to afford adequate deterrence to criminal conduct; and the need to protect the public from further crimes by Mr. Vega-Acosta. In the narrative portion of the statement, the district court stated that the mitigating factors undermined the argument for a lesser sentence because, despite Mr. Vega-Acosta's advantages in life, he still chose to engage in "extreme conduct" that placed not only M.C., but her daughter, in "extreme danger" and had "lasting effects" on them.  R. vol. II at 33.

It is not unknown for evidence to "have a double-edged impact." *Smith v. Duckworth*, 824 F.3d 1233, 1254 (10th Cir. 2016); *see also Lott v. Trammell*, 705 F.3d 1167, 1207-08 (10th Cir. 2013) (evidence "could reasonably be viewed as mitigating to one person and aggravating to another" (internal quotation marks omitted)).  And it takes no great leap to infer from the record that as the district court

learned more about Mr. Vega-Acosta's history and background, as well as the circumstances of the offense, it found his conduct less understandable and more concerning, rather than more understandable and less concerning. *See United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999) ("Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime."). The discussion is not "fulsome," but it gives sufficient detail "for us to review [the district court's] reasoning on appeal." *United States v. Rocha*, 145 F.4th 1247, 1272-73 (10th Cir. 2025). Even if there were an error, Mr. Vega-Acosta has failed to establish it was plain.

**B.    The court did not plainly err by relying on socioeconomic status.**

Mr. Vega-Acosta next argues that the district court plainly erred in relying on his socioeconomic status in sentencing him. He contends that the district court "emphasized [he] had certain socioeconomic advantages over people who grew up in the system and had not great lifestyles growing up," and that it mentioned his "college education, teaching background, life skills, world travel, and parental status as aggravating factors." Aplt. Opening Br. at 28 (internal quotation marks omitted). He asserts that his "status as a college-educated person with a steady job was an element of his socioeconomic status and an unacceptable reason for an upward variance." *Id.* at 29.

We have recognized that "if a district court bases a sentence on a factor not within the categories set forth in § 3553(a), this would be one form of procedural

11

error." *Rocha*, 145 F.4th at 1270 (brackets and internal quotation marks omitted).

And Congress directed the Sentencing Commission to "assure that the guidelines and

policy statements are entirely neutral as to the . . . socioeconomic status of

offenders." 28 U.S.C. § 994(d). Accordingly, socioeconomic status is "not

ordinarily relevant in sentencing determinations." *United States v. Smith*, 133 F.3d

737, 750 n.20 (10th Cir. 1997);[2] *see also United States v. Sample*, 901 F.3d 1196,

1199-1200 (10th Cir. 2018) (collecting authorities for the proposition that "courts

should not rely on a defendant's wealth in fashioning a sentence").

But statutorily the district court must consider the defendant's "history and

characteristics," § 3553(a)(1), and it faces "[n]o limitation" on "information

concerning the [defendant's] background, character, and conduct" in fashioning a

sentence, 18 U.S.C. § 3661. *See also United States v. Pinson*, 542 F.3d 822, 838-39

(10th Cir. 2008) ("[D]istrict courts have wide discretion in choosing the factors

[they] consider[] during sentencing[,] . . . even . . . when, as here, the factor is a

discouraged one under the guidelines."); *United States v. Sells*, 541 F.3d 1227,

1237-38 (10th Cir. 2008) (in deciding whether to vary, courts have "broad discretion

to consider individual characteristics," even characteristics that are disfavored

grounds for departure). This court has recognized that a district court may touch on

---

[2] *Smith* cited United States Sentencing Guideline § 5H.10 (providing that certain factors, including socioeconomic status, "are not relevant in the determination of a sentence"). *See Smith*, 133 F.3d at 750 n.20. Section 5H.10 was part of the 2023 Guidelines, under which Mr. Vega-Acosta was sentenced, but it was deleted effective November 1, 2025.

impermissible sentencing factors "in framing its consideration of permissible sentencing factors enumerated in 18 U.S.C. § 3553(a)." *Rocha*, 145 F.4th at 1270. And a particular piece of information may not slot neatly into one category. *See United States v. Burney*, 992 F.3d 398, 400 (5th Cir. 2021) ("Courts must . . . differentiate between facts about a defendant that comprise his socioeconomic status and those that make up his background.  That is not always easy.").

Here, the information Mr. Vega-Acosta identifies as relevant to his socioeconomic status also reasonably relates to his background.  "Socioeconomic status refers to an individual's status in society as determined by *objective* criteria such as education, income, and employment; it does not refer to the *particulars* of an individual life." *Id.* (brackets and internal quotation marks omitted).  For example, the district court referred to Mr. Vega-Acosta's childhood, college education, former job as a teacher, and history of world travel.  These experiences all relate to his history and background.  *See id.* ("A defendant's childhood economic conditions, as opposed to his current ones, are generally not part of the defendant's socioeconomic status.").  It therefore does not appear that the district court committed error in discussing the factors Mr. Vega-Acosta identifies.  *See id.* at 400-01; *Rocha*, 145 F.4th at 1270-71.

In addition, it was Mr. Vega-Acosta's counsel who urged the court to consider characteristics that might intertwine with socioeconomic status, explicitly invoking his service in the Peace Corps in Mongolia, his steady employment, and his "healthy pro-social activities . . . such as rock climbing and running marathon races."  R. vol. I

at 18. One could conclude the district court's comments were intended to reject such arguments rather than intended to sentence him based on an impermissible factor. *See United States v. Guidry*, 199 F.3d 1150, 1161 (10th Cir. 1999). Accordingly, even if there were an error, it was not a plain error.

### C. The court did not plainly err in relying on risk of recidivism.

The third reason Mr. Vega-Acosta suggests as procedurally unreasonable is the district court's rejection of evidence that his behavior was aberrant and would not be repeated. He contends that the court instead imposed the upward variance "based on its own fears . . . that Mr. Vega-Acosta posed such a significant risk of recidivism" and "unfounded fears based on the need to protect the public." Aplt. Opening Br. at 31, 32. He asserts, "To the extent that the district court affirmatively found that Mr. Vega-Acosta posed a significant risk of recidivism, that finding was in direct conflict with the evidence before the court. The district court clearly erred in making that finding, and plainly so." *Id.* at 31-32.

A district court commits a procedural error by "selecting a sentence based on clearly erroneous facts." *Gall*, 552 U.S. at 51. To establish clear error, a defendant must convince us "that the sentencing court's finding is simply not plausible or permissible in light of the entire record on appeal, remembering that we are not free to substitute our judgment for that of the district judge." *United States v. Woodmore*, 127 F.4th 193, 226-27 (10th Cir. 2025) (internal quotation marks omitted). "Under clear error review, we view the evidence and inferences drawn therefrom in the light most favorable to the district court's determination." *United States v. Porter*,

14

928 F.3d 947, 962 (10th Cir. 2019) (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Therefore, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* at 573-74.

The district court's view of the evidence is plausible, and therefore it did not clearly err, or at least not plainly so. Its finding that Mr. Vega-Acosta posed a risk of recidivism and a potential danger to the public was based on permissible inferences, viewing the record in the light most favorable to its determination. Mr. Vega-Acosta argues that his behavior was aberrant, and it is true that he had no prior criminal history. But that did not stop him from committing the instant offense (which itself did not involve a one-time action, but separate actions committed over a period of time). He further argues that "his career opportunities, family and community support, therapeutic support, and motivation to succeed would all help him transition back into the community after his prison term." Aplt. Opening Br. at 30. Such factors as his employment and family support, however, also did not deter him from committing the instant offense in the first place—and as discussed above, in certain respects, the district court considered his background and history to be aggravating rather than mitigating. As for therapy, the record indicates that Mr. Vega-Acosta had a history of mental-health treatment, R. vol. III at 36, which also did not help him

15

avoid committing the instant offense. In sum, although "Mr. Vega-Acosta expressed his desire and intent to prove that he was 'not a horrible guy,' 'not a danger,'" Aplt. Opening Br. at 30, the district court was not bound to believe him, especially in light of its finding that the instant offense involved an "extreme" degree "of malice and vindictiveness and nastiness both personally and safety-wise," R. vol. III at 53.

As the government asserts, even if the district court could have drawn the inference that Mr. Vega-Acosta would not recidivate, it was not compelled to draw that inference. Its failure to do so was not a plain procedural error.

## II.     Substantive Reasonableness

Mr. Vega-Acosta also appeals the substantive reasonableness of the sentence. Substantive reasonableness examines "whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a)." *Vazquez-Garcia*, 130 F.4th at 897 (internal quotation marks omitted). We review substantive reasonableness "under an abuse-of-discretion standard, looking at the totality of the circumstances." *Id.* at 900 (internal quotation marks omitted). "To prove the court abused its discretion, the defendant must show the sentence exceeded the bounds of permissible choice, such that the sentence is arbitrary, capricious, whimsical, or manifestly unreasonable." *United States v. Gross*, 44 F.4th 1298, 1302 (10th Cir. 2022) (internal quotation marks omitted).

"Even when a sentence falls outside the Guidelines range, we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Vazquez-Garcia*, 130 F.4th at 900 (internal quotation

16

marks omitted). Nonetheless, "reasonableness review must not be regarded as a rubber stamp." *Id.* (internal quotation marks omitted). Although an upward-variant sentence is not afforded the presumption of reasonableness a within-Guideline sentence enjoys, neither is it subject to a presumption of unreasonableness. *See United States v. Valtierra-Rojas*, 468 F.3d 1235, 1238-39 (10th Cir. 2006). "[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50. "A reviewing court therefore must determine if the district court's proffered rationale, on aggregate, justifies the magnitude of the sentence." *Pinson*, 542 F.3d at 837.

Mr. Vega-Acosta asserts that the sentence is substantively unreasonable in light of the record and § 3553(a) factors. He contends that the district court improperly focused overwhelmingly on the nature and circumstances of the offense while paying insufficient attention to other factors, including his need for ongoing medical treatment, the recommended Guidelines range, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. He also contends that the district court improperly considered his history and characteristics and unreasonably rejected the evidence of his low recidivism risk. As a result, he suggests, his sentence does not fairly reflect the § 3553(a) sentencing factors.

But in arguing the district court improperly weighed or failed to properly consider various factors, Mr. Vega-Acosta "simply asks us to reweigh factors already presented to the district court—something we cannot and will not do" because

17

"[r]eweighing the § 3553(a) factors is beyond the ambit of our review for substantive reasonableness." *United States v. Ware*, 93 F.4th 1175, 1181 (10th Cir. 2024) (brackets and internal quotation marks omitted). The § 3553(a) "factors do not necessarily bear equal weight, and the district court [bears] the delicate task of balancing these factors." *United States v. Walker*, 844 F.3d 1253, 1259 (10th Cir. 2017); *see also United States v. Barnes*, 141 F.4th 1156, 1163-64 (10th Cir. 2025) ("We do not second-guess the district court's assessment of the § 3553(a) factors.").

Mr. Vega-Acosta particularly argues that the district court placed too much weight on the nature and circumstances of the offense in light of other factors. But "[i]n deciding that the guideline range was too low, the court regarded [his] conduct as unique. This assessment was at least reasonable." *United States v. Doty*, 150 F.4th 1351, 1357 (10th Cir. 2025); *see also Rocha*, 145 F.4th at 1276 ("Under [the] deferential standard of review, we cannot say that the district court's determination that [the defendant's] offense conduct was extraordinarily reckless and deserved to be weighed heavily in the court's application of the § 3553(a) factors ultimately rendered his sentence substantively unreasonable."). The gravity of Mr. Vega-Acosta's conduct and the severity of the harm to M.C. and her daughter are well-supported by the record.

The district court identified the various § 3553(a) factors and explained its reasoning for imposing an upward variance. Although Mr. Vega-Acosta would have preferred a different evaluation and balancing, the district court's decision was not arbitrary, capricious, whimsical, or manifestly unreasonable, and we are not

18

persuaded that the sentence exceeds the bounds of permissible choice in this case.

We therefore cannot conclude the sentence was substantively unreasonable.

### CONCLUSION

We affirm the district court's judgment.

Entered for the Court


Harris L Hartz
Circuit Judge